UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RORY COLEMAN, | : | |
| *Petitioner,* | : | |
| | : | |
| v. | : | No. 3:15-cv-1878 (MPS) |
| | : | |
| EDWARD MALDONADO, et al. | : | |
| *Respondents.* | : | April 2, 2018 |

_____

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

On December 29, 2015, the petitioner, Rory Coleman, an inmate currently
incarcerated at the Willard-Cybulski Correctional Institution in Enfield, Connecticut,
brought a petition for writ of habeas corpus *pro se* under 28 U.S.C. § 2254 in this Court
challenging his state court convictions for possession of narcotics with intent to sell by a
person who is not drug-dependent, in violation of CONN. GEN. STAT. § 21a-278(b),
possession of narcotics, in violation of CONN. GEN. STAT. § 21a-279(a), and possession of
narcotics within fifteen hundred feet of a school, in violation of CONN. GEN. STAT. § 21a-
279(d). *State v. Coleman*, 114 Conn. App. 722, 723 (2009), Resp't App. A (ECF No. 16-
1). He raises three claims in support of his petition: (1) the evidence presented at his
criminal trial was insufficient to establish the possession element of all three convictions;
(2) the trial court improperly instructed the jury on the possession element; and (3) trial
counsel was ineffective by failing to request a charge on the possession element that
excluded any reference to joint possession and by inducing the trial court to reinstruct the
jury on the original charge, thereby precluding appellate review of the instructional error
claim. Petition (ECF No. 1) 9-13, *Coleman v. Warden*, 09 Civ. 4003109 (*Cobb, J.*), 2013
WL 4872708, *4 (Conn. Super. Ct. Aug. 20, 2013), Resp't App. J (ECF No. 16-11). The

respondent filed an opposition to the petition on July 18, 2016. For the following reasons, the Court will DENY the petition for writ of habeas corpus.

I.      Standard of Review

A federal court will entertain a petition for writ of habeas corpus challenging a state court conviction under § 2254 only if the petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2255(a). A claim that a state conviction was obtained in violation of state law is not cognizable in this Court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotations omitted). This Court cannot grant a petition for writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a very difficult standard to meet. *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013).

Clearly established federal law is found in holdings, not dicta, of the United States Supreme Court at the time of the state court decision. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'"

*Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)).  A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).

It is not enough that the state court's decision is incorrect or erroneous.  *Eze v. Senkowski*, 321 F.3d 110, 124-25 (2d Cir. 2003).  Rather, the state court's application of clearly established law must be objectively unreasonable, a substantially higher standard.  *Id.*; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  Thus, a state prisoner must show that the challenged court ruling "was so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

When reviewing a habeas petition, this Court presumes that the factual determinations of the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  *Id.*  Moreover, this Court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

II.    Procedural History

    A.    Criminal Trial

In this case, the petitioner was charged with narcotics offenses stemming from his participation in a transaction for the sale of cocaine on May 9, 2005. Direct Appeal R., Resp't App. B (ECF No. 16-2). The facts of the case are set forth in the Connecticut Appellate Court's opinion as follows:

> On May 9, 2005, Robert Burgos and Brenon Plourde, members of the Hartford police department, and Peter Borysevicz, a special agent employed by the federal Drug Enforcement Administration, were members of a Hartford task force assigned to investigate narcotic trafficking crimes in Hartford and its surrounding towns. While conducting surveillance of a house at 24 Florence Street in Hartford, Plourde was parked in an undercover minivan in a parking lot a few streets from the house. A confidential informant previously had provided information to Burgos, Plourde and Borysevicz that crack cocaine was being cooked at the Florence Street location and was being distributed to drug dealers. The informant had told the police that a man later identified as Kendrick Leggett was selling drugs in the neighborhood. The informant had given a physical description of Leggett, who drove a gold Ford Explorer with tinted windows and Massachusetts rental plates.

> At approximately 8 p.m., on May 9, 2005, a vehicle matching the description given by the informant arrived at 24 Florence Street. A passenger got out, and the vehicle departed. At approximately 8:30 p.m., the same vehicle entered a parking lot adjacent to the parking lot in which Plourde's minivan was parked. Plourde radioed to Burgos and Borysevicz. He notified them that the gold Explorer was in the parking lot in front of him. Plourde was unable to see into the Explorer.

> A few moments later, an Oldsmobile entered the parking lot and stopped next to the Explorer. The driver of the Oldsmobile, later identified as the [petitioner], left his car and entered the Explorer. When the [petitioner] entered the Explorer, the interior light went on, and Plourde was able to see the driver of the Explorer. The driver matched the physical description of Leggett that had been given by the informant. When the [petitioner] shut the passenger side door, the interior light turned off.

> A few moments later, the interior light in the Explorer went on for a second time. Plourde observed the [petitioner] appearing to examine something white in plastic that appeared to Plourde to be crack cocaine or powder cocaine. The [petitioner] held the plastic with the white substance in his hand. Several minutes later, the interior light came on for a third time. Plourde saw the [petitioner] and Leggett counting out money on the dashboard. Plourde notified Burgos and Borysevicz that the occupants of

4

the Explorer were exchanging money. He told them to proceed to the location of the Explorer and to make contact with the individuals inside.

Burgos parked his car directly in front of the Explorer to block it in and to prevent escape. On leaving his vehicle, Burgos pulled out his firearm and instructed Leggett to keep his hands where he could see them. Burgos observed a lot of movement from the driver, and money was "flying all over the place." After opening the door of the Explorer, Burgos found money on the dashboard, on Leggett's lap and in his hands. The amount of cash found on and near Leggett totaled $7700.

Borysevicz parked his car directly in front of the Oldsmobile. Upon leaving the car, Borysevicz drew his weapon and told the occupants of the Explorer to put their hands up. The [petitioner] complied by putting his hands up. Borysevicz observed money totaling $2046 in the [petitioner]'s lap and on the floor at his feet. He also found a plastic bag with a quantity of an off-white rock like substance on the floor of the passenger side of the vehicle. A field test performed on the substance revealed that it was freebase cocaine, also known as crack cocaine. It weighed four and one-half ounces, or 126 grams. The crack cocaine was seized within 1500 feet of the Quirk Middle School, a public school for students in the seventh and eighth grades.

After waiving his *Miranda*[1] rights, the [petitioner] provided the police with a handwritten, signed statement. He claimed that he met with Leggett to purchase an ounce of crack cocaine. After he handed Leggett $550, Leggett produced a bag of crack cocaine. Immediately thereafter, the police approached the vehicle and told Leggett and the [petitioner] to put their hands up.

*Coleman*, 114 Conn. App. at 724-26.

At the conclusion of evidence, the trial court discussed with the parties the charge it intended to give to the jury. After a charge conference, it asked both parties whether they had any issues with the proposed instructions, and neither party had any. *See* Criminal Trial Tr. 3, Resp't App. Q (ECF No. 16-19). The trial court gave the following instruction to the jury on the possession element with respect to each count:

For you to find the [petitioner] guilty of this charge, the State must prove beyond a reasonable doubt that the [petitioner] knowingly possessed or had

---

[1] *State v. Miranda*, 384 U.S. 436 (1966).

cocaine under his control. Possession may be actual or constructive. Possession, whether actual or constructive, may be proven by either direct or circumstantial evidence. Keep in mind that possession of the cocaine, not ownership, is all that is required.

Actual possession is established when it is shown that the [petitioner] had actual physical possession of the cocaine. Constructive possession is established when it is shown that the [petitioner] exercised dominion and control over the cocaine, and had actual knowledge of its presence. Remember then, constructive possession requires a showing of two things, control and knowledge.

Constructive possession may be exclusive or shared by others. The latter is known as joint possession.

*Id.* at 42-43. The petitioner took no exception to the charge as given. *Id.* at 51.

After deliberations had begun, the trial court received a note from the jury requesting "further instruction on [the] definition of possession. One, constructive, two, joint, three, any other." Criminal Trial Tr. 56-57. The trial court suggested to the parties that it reread its original instructions on the possession element, and the petitioner agreed with that plan. *Id.* at 57, 58. The court then brought the jury into the courtroom and reread the same instructions on the possession element as in its original charge, and the petitioner took no exception. *Id.* at 58-61.

Thereafter, the trial court received a second note from the jury asking "can only one of the two individuals in the gold SUV renter be considered in possession." Criminal Trial Tr. 62. The court interpreted the jury's question as asking whether "more than one person [could] possess the item in the van." *Id.* at 63. It informed the parties that it believed the correct answer to the jury's question was yes, but it entertained arguments from counsel. *Id.* Although he did not disagree with the trial court's assessment, the petitioner expressed concern with the court's ability to explain to the jury how two people

could jointly possess the cocaine and suggested that the court reread its original charge on the possession element:

> THE COURT:        Well, if the question is can two or more people simultaneously possess something, the answer's yes.

> [PETITIONER'S COUNSEL]:        One item. That's true. But –

> THE COURT:        I mean do you disagree with that?

> [PROSECUTOR]:        The State does not.

> [PETITIONER'S COUNSEL]:        Well, I don't know. I mean, who really has the control and dominion over the item, I guess, would answer the question.

> THE COURT:        Well that's what the jury's for. I guess they would look at all the evidence and make a decision whether more than one person possessed the item. Maybe more than one did, maybe more than one didn't. And I don't know who they think possessed it. If they think only one possessed it.

> And I'm not going to ask them that. But, strictly speaking, the question seems to be can more than one person possess an item in their car. And if that's the question, I think the simple answer is yes.

> [PETITIONER'S COUNSEL]:        But wouldn't it be safer to read the charge? To say this [is] all I can do, is tell you what the law is. I can't answer the question for you.

*Id.* at 64-65. After further discussion, the trial court decided to ask the jury to clarify its question, and the jury sent out a third note that asked the following: "[U]nder the law, can two individuals have possession or control of the same narcotic?" *Id.* at 71-72. Again, the court informed the parties that it believed the answer to the jury's question to be yes but entertained arguments from counsel. *Id.* at 72. The petitioner then expressed its disagreement with the trial court's assessment but argued that the best way to respond to the note would be for the court to reread its instruction on the possession element:

> [PETITIONER'S COUNSEL]:     Well, I would disagree, Your Honor.
> I think you either actually possess it, or you constructively possess it, and I
> think the third option is jointly.  I don't – I don't know how you get to that
> determination, but none the less [sic] I would agree that the way I would
> cure this, is to read the charge again.  I think that would be the remedy.

*Id.* The trial court agreed but limited its third instruction to the charge on constructive

possession, omitting the charge on actual possession.  *See id.* at 74.

After further deliberations, the jury reached a verdict convicting the petitioner of

possession of narcotics with intent to sell, possession of narcotics, and possession of

narcotics within fifteen hundred feet of a school.  Criminal Trial Tr. p. 77.  The jury

acquitted with respect to possession of narcotics with intent to sell within fifteen hundred

feet of a school.  *Id.*  Afterward, the trial court sentenced the petitioner to a total effective

term of twelve years of incarceration and three years of special parole.  *Coleman*, 114

Conn. App. at 726.[2]

B.  Direct Appeal

The petitioner appealed his convictions to the Connecticut Appellate Court on two

grounds:  (1) the evidence was insufficient to establish that he had actual or constructive

possession of the cocaine found by police; and (2) the trial court improperly instructed

the jury on the possession element with respect to each charge.  *Coleman*, 114 Conn.

App. at 723.  With respect to his second claim, the petitioner argued that the trial court

> (1) improperly instructed the jury on joint possession because the state's
> theory of the case did not support such an instruction, (2) misled the jury by
> failing to answer its question adequately about joint possession, (3)
> confused the jury by instructing it on actual possession when the only theory

---

[2]  The Connecticut Department of Correction's ("DOC") website lists the
petitioner's sentence as "18 year(s)."  *See* Inmate Information: Coleman, Rory,
Connecticut State Department of Correction,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=237871 (last accessed
March 30, 2018).

supported by the evidence was constructive possession, and (4) improperly
gave misleading instructions on constructive and joint possession.

*Id.* at 729. The Appellate Court rejected both claims and affirmed the petitioner's

convictions. *See id.* at 726-34.

With respect to the first claim, the Appellate Court held that the state presented

sufficient evidence that the petitioner actually possessed the cocaine. *Coleman*, 114

Conn. App. at 728-29. Relying on its previous decision in *State v. Ellis T.*, 92 Conn.

App. 247 (2005), the Court held that the jury reasonably could have inferred that the

petitioner, "the only person observed in physical possession of the drugs, dropped the

drugs at his feet moments before he was arrested and had actual possession of the drugs

moments before his arrest." *Coleman*, 114 Conn. App. at 729. Thus, "[t]he [petitioner's]

actions established the necessary dominion and control over the narcotics to constitute

sufficient evidence of possession." *Id.* Because the Court held that the evidence

sufficiently established actual possession, it did not address constructive or joint

possession. *Id.* at 729 n.2.

The Appellate Court declined to review the instructional error claims because any

error "was induced by the [petitioner]." *Coleman*, 114 Conn. App. at 730. The Court

reasoned that the petitioner agreed with the proposed instructions on possession and took

no exception to the instructions as given. *Id.* at 730-31. Moreover, when the jury

requested further clarification on the possession element, particularly the issue of joint

possession, the petitioner suggested that the trial court reread the instructions on

possession it had given before deliberations. *See id.* at 731-32. Relying on the

Connecticut Supreme Court's decision in *State v. Cruz*, 269 Conn. 97 (2004), the

Appellate Court held that the petitioner repeatedly induced the trial court to reread the

same instructions he later challenged on direct appeal and, therefore, he was not entitled to review of his instructional error claim. *See Coleman*, 114 Conn. App. at 732-33.

The petitioner filed a petition for certification to appeal the Appellate Court's decision, but the Connecticut Supreme Court denied the petition. *State v. Coleman*, 293 Conn. 907 (2009), Resp't App. H (ECF No. 16-9).

### C. State Habeas Proceedings

On September 5, 2012, the petitioner filed an amended petition for writ of habeas corpus in state court. Case Detail for State Habeas, Resp't App. I (ECF No. 16-10). The amended petition consisted of two counts, one of which contained ten claims of ineffective assistance of trial counsel and the other a claim of ineffective assistance of appellate counsel. *Coleman*, 2013 WL 4872708, *2. However, at the start of his habeas trial, the petitioner withdrew all of his claims except for one: trial counsel was ineffective for failing to request a charge on the possession element that excluded any reference to "joint possession" and by repeatedly inducing the trial court to reinstruct the jury with the original charge, which included the "joint possession" reference, thereby precluding review on direct appeal. *Id.* at *2, 4.

At his habeas trial, the petitioner presented testimony from trial counsel and himself. Trial counsel testified that his defense strategy was to show the jury that the petitioner never actually (physically) possessed the cocaine. Habeas Trial Tr. 13, 15, 19, Pet'r Ex. (ECF No. 17). He agreed that if the state proved actual possession, they would not need to prove that the petitioner constructively possessed the cocaine. *Id.* at 17. When asked about the jury notes, trial counsel testified that he thought the safest option was for the trial court to reread the original charge because the notes appeared to indicate

that the jury may not have believed that the petitioner actually possessed the cocaine and was not yet convinced that he constructively possessed the cocaine. *See id.* at 33 ("I'm saying, Judge, just stick to what you said originally on the possession because that was our whole argument at the time of our closing, we might be all right. And it seemed that way for – it seemed like we were going to win"); *id.* at 37 ("the fact that they're asking questions, it seemed to me they were bound into argument that he never had the opportunity to physically possess the narcotics"). The petitioner agreed with trial counsel that their defense theory was that he never actually possessed the drugs but acknowledged that the evidence showed that one officer saw him handling them shortly before his arrest. *Id.* at 50, 53.

In closing, the petitioner argued that trial counsel should have requested a modified instruction in response to the jury's notes omitting the reference to "joint possession" because there was no evidence of joint possession and it was never part of the state's theory of the case. Habeas Trial Tr. 61-62. He also argued that the Appellate Court's decision that trial counsel induced the instructional error claimed on appeal showed that trial counsel should have objected or requested to modify the existing charge. *Id.* at 63. The petitioner acknowledged, however, that the Appellate Court's decision did not necessarily mean that the charge as given was unlawful. *Id.*

In a written memorandum of decision, the state habeas court denied the petition. *Coleman*, 2013 WL 4872708, *1. Applying the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), the court ruled that the petitioner failed to show either deficient performance of trial counsel or prejudice because he could not prove that the trial court's instruction on possession as given was erroneous. *Id.* at *5. It

relied on the Connecticut Supreme Court's decision in *State v. Kitchens*, 299 Conn. 447, 498 (2011), that "claims of instructional error deemed waived on direct appeal will still be reviewed in habeas proceedings because the habeas court must address the merits of the underlying claim in deciding whether there was ineffective assistance of counsel."

When reviewing the jury charge, the habeas court ruled that (1) the trial court gave the standard boilerplate charge on possession, (2) under *State v. Williams*, 110 Conn. App. 778, 789 (2008), it is possible for two people to jointly possess narcotics, (3) during a drug transaction, "the seller and buyer can both have dominion and control over the drugs," and (4) the evidence presented at the criminal trial supported the constructive possession charge, including the reference to joint possession. *Coleman*, 2013 WL 4872708, *5. Such evidence, according to the habeas court, included evidence that the petitioner was arrested in the middle of a drug transaction with Leggett, testimony from Officer Plourde that he saw the petitioner examining the drugs in the vehicle and also saw the petitioner and Leggitt handling money, testimony from Agent Borysevicz that he found cocaine on the floor of the passenger seat where the petitioner had been sitting, and the petitioner's admission that he was in process of purchasing cocaine from Leggett when the police arrived. *Id.* Based on this evidence, the state habeas court ruled that "trial counsel cannot be faulted for failing to request a charge excluding joint possession or for inviting the trial court to respond to the jury notes by re-instructing them as originally charged, which included an instruction on joint possession." *Id.*

The petitioner appealed the state habeas court's decision to the Connecticut Appellate Court, which affirmed the decision in a *per curiam* opinion. *Coleman v. Comm'r of Corr.*, 155 Conn. App. 904 (2015). Thereafter, the Connecticut Supreme

Court denied the petitioner's petition for certification to appeal the Appellate Court's decision. *Coleman v. Comm'r of Corr.*, 317 Conn. 903 (2015).

III.    Analysis

The petitioner claims that this Court should grant his § 2254 petition because (1) the evidence was insufficient to establish either actual or constructive possession with respect to each of the charges, (2) the trial court did not properly instruct the jury on the possession element in response to their written notes during deliberations, and (3) trial counsel was ineffective for failing to request a modified jury instruction in response to the jury's notes omitting any reference to joint possession. Because the petitioner has not shown that the state court decisions on these issues were contrary to, or constituted an unreasonable application of, United States Supreme Court precedent or that they were based on an unreasonable determination of the facts in light of the evidence presented at his criminal trial, the Court denies the petition.

A.    Sufficiency of the Evidence

The petitioner first claims that the Connecticut Appellate Court improperly concluded that the state's evidence was sufficient to establish either actual or constructive possession of the cocaine. However, the Appellate Court reasonably applied the well-established principles of sufficiency review, as set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), and properly concluded that the cumulative effect of the evidence and the reasonable inferences drawn therefrom supported a finding of actual possession of the cocaine beyond a reasonable doubt.

A criminal defendant challenging the sufficiency of his conviction "'bears a heavy burden' . . . as the standard of review is 'exceedingly deferential.'" *United States*

*v. Dozier*, 492 F. App'x 205, 206 (2d Cir. 2012) (quoting *United States v. Heras*, 609 F.3d 101, 105 (2d Cir. 2010) and *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008)).  The Court must view the evidence presented and the reasonable inferences drawn therefrom in the light most favorable to the prosecution, and the conviction must be affirmed if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012); *United States v. Sempere-Valero*, 84 F. App'x 146, 147 (2d Cir. 2004).  In evaluating the evidence, "all issues of credibility must be resolved in favor of the prosecution;" *Sempere-Valero*, 84 F. App'x at 147; and "the evidence need not . . . exclude[] every permissible hypothesis of innocence." *United States v. Pitre*, 960 F. 2d 1112, 1120 (2d Cir. 1992) (quoting *United States v. Soto*, 716 F.2d 989, 993 (2d Cir. 1983)).  Moreover, the "'reviewing court must view pieces of evidence not in isolation but in conjunction.'" *Id.* (quoting *United States v. Casamento*, 887 F.2d 1141, 1156 (2d Cir. 1989)).

A petitioner's claim challenging the sufficiency of the evidence supporting his convictions "face[s] a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).  The petitioner is entitled to habeas relief only if he can show that, upon viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 443 U.S. at 324)).  "On habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was

'objectively unreasonable.'''" *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).  When reviewing a sufficiency of the evidence claim, the "federal court must look to the state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

In this case, the Connecticut Appellate Court applied a sufficiency standard that mirrors that of *Jackson*.  It correctly held that the state presented direct testimony from Officer Plourde that the petitioner had actual physical possession of the cocaine moments before his arrest.  *Coleman*, 114 Conn. App. at 729.  When the police approached the vehicle, the cocaine was found on the floor of the passenger seat of the vehicle where the petitioner had been sitting.  *Id.*  This testimony reasonably could support an inference that the petitioner had actual possession of the drugs and dropped them on the passenger floor moments before his arrest.  *Id.*

The Appellate Court based its decision in part on *State v. Ellis T.*, 92 Conn. App. 247 (2005).  In that case, the defendant argued that there was insufficient evidence that he possessed the narcotics which resulted in a finding of violation of probation.  *Id.* at 251 n.3.  Relying on testimony from a police officer who witnessed the defendant drop the narcotics moments before arrest, the Court upheld the violation of probation because the evidence supported a finding of possession.  *Id.* at 252.  Although the petitioner in this case correctly draws the distinction that the officer in *Ellis T.* witnessed the defendant drop the drugs whereas Officer Plourde merely saw the petitioner handling the drugs and did not see him drop them on the floor of the vehicle; Petition at 9; the Appellate Court's finding that jury reasonably could draw the inference that he dropped them on the floor is not an unreasonable application of sufficiency jurisprudence.  *See Chalmers v. Mitchell*,

73 F.3d 1262, 1272 (2d Cir. 1996) (jury reasonably could conclude that defendant possessed drugs in apartment and fled to another room upon officers' arrival); *Ramos v. Costello*, 96 Civ. 3659 (LLS), 1997 WL 231129, *5 (S.D.N.Y. May 7, 1997) (even though petitioner was not holding gun when he was arrested, jury reasonably could have concluded that petitioner had possessed it and hid it underneath car upon officers' arrival). The Appellate correctly applied the law on sufficiency of the evidence and held that a rational jury could find the possession element proven beyond a reasonable doubt based on the evidence presented.

The petitioner's argument that there was "more than one way the drugs could have fallen on the passenger side" is without merit. Petition at 9. It is well established that a court reviewing a sufficiency challenge need not exclude every possibility of innocence. *Pitre*, 960 F. 2d at 1120. The court only need decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Because the Appellate Court's conclusion is reasonable in light of the evidence presented, and the petitioner has not shown otherwise, this Court rejects his claim that the evidence was insufficient to support his narcotics convictions.

B. <u>Instructional Error</u>

The petitioner next claims that "the trial court [improperly gave] misleading instructions on possession [and] refus[ed] to answer the jury's question[s] about joint poss[ession]." Petition at 11. Because the Appellate Court's decision was based on a procedural bar, which constituted independent and adequate state law grounds, this Court declines to review the petitioner's claim.

As shown above, the Appellate Court declined to review the petitioner's instructional error claim under the "induced error" doctrine. *Coleman*, 114 Conn App. at 732. Under that doctrine, a party cannot challenge on appeal an error that he, through conduct, encouraged or prompted the trial court to make. *Id.* (quoting *State v. Brunetti*, 279 Conn. 39, 59 n.32 (2006)). "This principle bars appellate review of induced nonconstitutional error and constitutional error." *Brunetti*, 279 Conn. at 59 n.32. The Appellate Court relied on the Connecticut Supreme Court's decision in *Cruz*, 269 Conn. at 102-06, in which the Supreme Court declined to review the defendant's challenge to the trial court's self-defense instruction that he himself requested be given to the jury.

The Appellate Court properly concluded that, in this case, the petitioner, through counsel, twice requested that the trial court give the same instructions on possession as stated in its original charge (to which the petitioner did not object), which included a reference to joint possession. *Coleman*, 114 Conn. App. at 733; Criminal Trial Tr. 57-58, 65. Therefore, applying the induced error doctrine, the Appellate Court declined to review on appeal the petitioner's challenge to the instructions on possession as given. *Coleman*, 114 Conn. App. at 733.

"[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). A federal court "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). This doctrine has been routinely applied to state court judgments rejecting claims because

of procedural default. *See id.* at 261. If the state court decision "clearly and expressly" states that its judgment dismissing the petitioner's claim rests on a state-imposed procedural bar, then a federal court may not consider the claim on habeas review. *See id.* at 263 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).

In this case, the Appellate Court clearly and unequivocally dismissed the petitioner's instructional error claim based on a state rule of procedural default. *See State v. Alston*, 272 Conn. 432, 455-56 (2005) ("actions that are induced by a party cannot be grounds for appealable error; therefore, they do not merit review"). Because it held that the petitioner induced the alleged instructional error, the Appellate Court did not consider the merits of his claim, and under *Harris*, neither may this Court.

C. Ineffective Assistance of Counsel

Nevertheless, this Court can review the merits of the petitioner's instructional error claim in the context of the petitioner's third ground for habeas relief, alleging ineffective assistance of trial counsel, because, as shown above, the state habeas court rejected the ineffective assistance claim based on its determination that the trial court's instructions were adequate. Because this Court must review the state habeas court's decision for reasonableness based on clearly established federal law under § 2254(d), it must analyze the state habeas court's decision on the adequacy of the trial court's jury instructions.

It is well-established that the Sixth Amendment right to the assistance of counsel is the right to the effective assistance of counsel. *Eze*, 321 F.3d at 124 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441 (1970)). A claim that counsel was ineffective is reviewed under the standard set forth in *Strickland*, 466 U.S. 668. To

prevail, the petitioner must demonstrate, first, that counsel's performance "fell below an objective standard of reasonableness" established by "prevailing professional norms," and, second, that this deficient performance caused prejudice to him.  *Id.* at 687-88.

In evaluating the performance prong, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.

To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  *Strickland*, 466 U.S. at 694.  "In the context of a claim that trial counsel was ineffective for failing to request specific jury instructions, a petitioner can show prejudice only by demonstrating a reasonable probability that the trial court would have given the jury instructions if requested and that the jury's verdict would have been different had the instructions been given."  *Augugliaro v. Bradt*, 08 Civ. 1548 (NG), 2014 WL 5093849, *12 (E.D.N.Y. Oct. 8, 2014).

When pursuing a state-exhausted ineffective assistance claim in federal court, it is not enough for the petitioner "to convince [the] federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  *Eze*, 321 F.3d at 124 (quoting *Bell*, 535 U.S. at 699).  Rather, he must show that the state habeas court applied *Strickland* in an objectively unreasonable manner.  *Id.*; *see also Williams*, 529 U.S. at 410 (unreasonable application of federal law different from incorrect

application of federal law). "[A] state court unreasonably applies established federal law if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Williams*, 529 U.S. at 413.

"In a criminal trial, the [s]tate must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citations omitted). A single challenged instruction "may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Id.; Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *see also Estelle*, 502 U.S. at 72 (fact that instruction was allegedly incorrect under state law insufficient basis for habeas relief).

"A jury charge in a state a trial is normally a matter of state law." *U.S. ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 50 (2d Cir. 1975), *overruled on other grounds*, *Graham v. Hoke*, 946 F.2d 982 (2d Cir. 1991). Thus, the petitioner challenging a trial court's jury instruction in a federal habeas proceeding bears the heavy burden of establishing a violation of a constitutional right. *Id.*; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). In satisfying his burden, it is not enough for the petitioner to show that the challenged instruction is "undesirable, erroneous, or even universally condemned." *Henderson*, 431 U.S. at 154 (internal quotations omitted). Rather, he must establish that the instruction "so infected the entire trial that the resulting conviction violates due process." *Id.* (internal quotations omitted); *Middleton*, 541 U.S. at 437. "If the charge as a whole is ambiguous, the question is whether there is a reasonable

likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437 (internal quotations omitted).

In this case, the state habeas court reasonably applied the principles of *Strickland* and concluded that trial counsel's failure to request a modified jury instruction on the possession element was not deficient performance, nor did it prejudice the petitioner. In doing so, it properly viewed the trial court's jury instructions as a whole rather than considering the reference to joint possession in isolation and concluded that the instructions as given fairly presented the case to the jury.

Although the petitioner is correct that the state presented evidence that he physically possessed the drugs, the jury was not precluded from finding joint possession because the evidence showed that both he and Leggett were engaged in a transaction for the sale of drugs in the vehicle. *See Coleman*, 2013 WL 4872708, *5 ("while a drug transaction is in progress, the seller and the buyer can both have dominion and control over the drugs"). The petitioner was seen examining the cocaine and counting out money with Leggett. *Id.* When the police officers approached, they saw "money all over the place, including on the petitioner and Leg[g]ett, and cocaine on the floor of the passenger seat where the petitioner had been sitting." *Id.* The petitioner admitted that he was in the process of purchasing the cocaine from Leggett when the police arrived. *Id.* Based on this evidence, the jury reasonably could have concluded that both individuals, at one point or another, exercised dominion or control over the cocaine in the vehicle. *See United States v. Hunley*, 476 F. App'x 897, 899 (2d Cir. 2012) (jury reasonably could conclude that both defendant and his girlfriend exercised joint possession over firearm and drugs found in defendant's vehicle). Therefore, the state habeas court properly

concluded that the trial court did not err in rereading the jury instructions on actual and constructive possession, including the reference to joint possession.

Because there was no error in the trial court's instructions, the state habeas court properly concluded that the petitioner could not prove that trial counsel was ineffective in failing to request a modified instruction. As the trial court stated in its discussion with trial counsel, an instruction to the jury that they could not find the petitioner guilty based on a theory of joint possession would not have been in accordance with the law because it is, in fact, possible for two individuals to have joint possession over an item. Criminal Trial Tr. at 64-65. Therefore, the petitioner cannot show a reasonable probability that the trial court would have agreed to a modified instruction prohibiting a finding of, or omitting any reference to, joint possession as it pertained to the charged offenses. *See Augugliaro*, 2014 WL 5093849, *12 (petitioner must show reasonable probability that trial court would have given requested instructions to prevail on ineffective assistance claim).

Moreover, trial counsel's testimony during the habeas trial showed that he requested the trial court to reread the initial instructions, which included joint possession, as part of a reasonable trial strategy. He gleaned from the jury's notes that they may not have agreed with the state's theory of actual possession and were struggling with the concepts of constructive and joint possession. *See* Habeas Trial Tr. 32-33, 37. His view was that either "Rory had it or not," *id.* at 37, and his view of the jury's notes was that they were trying to decide whether the petitioner had ever possessed the drugs at all, not whether the possession had been joint or not. *Id.* at 34, 37. He further suggested that the trial judge's charge on possession was helpful on this point and fit with his closing

argument on the possession issue, and that seeking a modification of the charge following receipt of the notes would not have been in Coleman's interest, as it might have diverted the jury from the direction in which he surmised they were headed:

> They're looking for a way to find him guilty or they're looking for a way not to find him guilty and if they're looking at it that—hey, you know they're telling us Coleman never had it and it doesn't seem to me that we have possession here. Right? I mean that's one way of looking at those notes, and I'm saying, Judge, just stick to what you said originally on the possession because that was our whole argument at the time of our closing, we might be all right. And it seemed . . . like we were going to win. I mean that's one way of looking at it and that's the way I looked at it.

Tr. at 33 (ECF No. 17 at 34). This was not an unreasonable strategy under the circumstances.

Based on the foregoing, the petitioner cannot satisfy his burden of showing that the state habeas court's application of *Strickland* and its rejection of the ineffective assistance of counsel claim were unreasonable. The state habeas court properly concluded that the jury instructions as a whole were correct in law and that trial counsel's performance was neither deficient nor prejudicial to the petitioner.

IV.     Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. The clerk is directed to enter judgment in favor of the respondents and close this case.

The court concludes that petitioner has not shown that he was denied a federally protected right and that, therefore, any appeal from this order would not be taken in good faith. A certificate of appealability therefore will not issue.

It is so ordered.

Dated at Hartford, Connecticut this 2nd day of April, 2018.

_____/s/_____
Michael P. Shea
United States District Judge